IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **JOHN RUSSO, as Personal Representative of the Estate of ANTHONY J. RUSSO,** | |
| **Plaintiff,** | **Docket No.** |
| **v.** | **JURY DEMANDED** |
| **MODEL TRANSPORT, LLC,**<br>Serve: **Yonas H. Ghebreyesus, Registered Agent**<br>**9182 Forest Lane, No. 21**<br>**Dallas, Texas 75243** | |
| **BSL LOGISTICS, LLC,**<br>Serve: **Alay Grebregiorgis, Registered Agent**<br>**26042 Laurel Pass**<br>**San Antonio, Texas 78260** | |
| **and** | |
| **ANGESOM GHEBRENDRIAS,**<br>Serve: **4172 Santa Susana Way**<br>**San Jose, California 95111-3551** | |
| **Defendants.** | |

## <u>COMPLAINT</u>

Plaintiff, JOHN RUSSO, as the Personal Representative of the Estate of Anthony J. Russo, his deceased father ("Plaintiff"), by and through his undersigned counsel, hereby sues Defendants MODEL TRANSPORT, LLC. ("MODEL TRANSPORT"), BSL LOGISTICS, LLC ("BSL LOGISTICS"), and ANGESOM GHEBRENDRIAS ("GHEBRENDRIAS") collectively the "Defendants" and says:

1

## OVERVIEW

On February 1, 2023, under normal traffic conditions, ANGESOM GHEBRENDRIAS, a dangerous and distracted driver, who was driving under the operating authority of MODEL TRANSPORT, was operating a 2019 Kenworth tractor, pulling a 53-foot trailer, and travelling northbound on Kempsville Road in the City of Norfolk, Virginia. The Decedent, Mr. Anthony Russo, was lawfully entering the intersection on Kempsville Road and Kempsville Circle. Defendant GHEBRENDRIAS was driving distracted and negligently travelled through the red-light, violating Mr. Russo's right of way. As a result of GHEBRENDRIAS's failure to observe and obey the red traffic signal, GHEBRENDRIAS violently struck the driver's side of Mr. Russo's Honda Accord. Consequently, Anthony Russo sustained severe and fatal injuries, suffered and died four (4) days later, on February 5, 2023.

## PARTIES, VENUE AND JURISDICTION

1.    This wrongful death action, brought pursuant to the provisions of the Virginia Wrongful Death Act, §8.01-50, arises out of a commercial motor vehicle crash that occurred on February 1, 2023, in the City of Norfolk, Virginia (the "Crash"), which resulted in the wrongful death of ANTHONY J. RUSSO.

2.    The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, since there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

3.    Venue is proper in the Eastern District of Virginia based on U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

4.      Plaintiff, JOHN RUSSO, is the Personal Representative of the Estate of his deceased father, Anthony J. Russo (collectively referred to as, "Plaintiff").  The Plaintiff is a resident of Orlando, Orange County, Florida. His deceased father ANTHONY J. RUSSO, was a resident of Virginia Beach, Virginia.

5.      At all relevant times, upon information and belief, Defendant ANGESOM GHEBRENDRIAS was a resident of San Jose, California and was conducting business in the state of Virginia, for which he receives substantial revenue and had agents or other representatives for the transaction of business in Virginia.

6.      General personal jurisdiction over ANGESOM GHEBRENDRIAS is proper under the Virginia Long Arm Statute and constitutional minimum contacts so that ANGESOM GHEBRENDRIAS could be hauled into court in Virginia for any litigated dispute, since ANGESOM GHEBRENDRIAS engaged in substantial and not isolated activity in Virginia, including without limitation regularly conducting substantial business and other activities in Virginia by providing services to persons and entities in this state on a daily basis; entering into contracts and business dealings in the state of Virginia and with Virginia citizens and businesses; owning and renting commercial real estate in Virginia; by regularly engaging in the hazardous activity of transporting goods and packages in interstate commerce over Virginia roads to and for Virginia residents and businesses in Virginia at the time of the Crash.

7.      Specific personal jurisdiction over ANGESOM GHEBRENDRIAS to be subject to Virginia Courts for this case is proper under the Virginia Long Arm Statute and constitutional minimum requirements, as ANGESOM GHEBRENDRIAS committed tortious acts within the State of Virginia, including without limitation by improperly and negligently operating the 2019

3

Kenworth Truck while delivering goods in Virginia in interstate commerce, which resulted in the Crash.

8.    At all relevant times, Defendant MODEL TRANSPORT was a for-profit corporation licensed under the laws of Texas, engaging in interstate operations, with its principal place of business in Dallas, Texas.

9.    General personal jurisdiction over MODEL TRANSPORT is proper under the Virginia Long Arm Statute and constitutional minimum contacts so that MODEL TRANSPORT could be hauled into court in Virginia for any litigated dispute, since MODEL TRANSPORT engaged in substantial and not isolated activity in Virginia, including without limitation regularly conducting substantial business and other activities in Virginia by providing transportation services to persons and entities in this state on a daily basis; entering into contracts and business dealings in the state of Virginia and with Virginia citizens and businesses; by regularly engaging in the ultra-hazardous activity of transporting goods and packages in interstate commerce over Virginia roads to and for Virginia residents and businesses; by qualifying, training and retaining professional tractor trailer drivers that MODEL TRANPORT knew would be used to operate commercial motor vehicles in Virginia in the ordinary course of its business; by providing services to its customers using commercial transportation services in Virginia that included transporting the goods in interstate commerce at the time of the crash;  and maintaining an agent for service of process in Virginia for any litigation arising out of its transportation of goods in interstate commerce.

10.    Specific personal jurisdiction over MODEL TRANSPORT to be subject to Virginia Courts for this case is proper under the Virginia Long Arm Statute and constitutional minimum requirements, as MODEL TRANSPORT committed tortious acts within the State of Virginia,

including without limitation by improperly qualifying, hiring, supervising and retaining Defendant, ANGESOM GHEBRENDRIAS to deliver its goods in Virginia, which resulted in the Crash.

11.    At all relevant times, BSL LOGISTICS, LLC was the registered title owner of the Truck operated by GHEBRENDRIAS.

12.    At all relevant times, Defendant BSL LOGISTICS was a for-profit corporation licensed under the laws of Texas, engaging in interstate operations, with its principal place of business in Dallas, Texas.

13.    General personal jurisdiction over BSL LOGISTICS  is proper under the Virginia Long Arm Statute and constitutional minimum contacts so that BSL LOGISTICS could be hauled into court in Virginia for any litigated dispute, since BSL LOGISTICS engaged in substantial and not isolated activity in Virginia, including without limitation regularly conducting substantial business and other activities in Virginia by providing transportation services to persons and entities in this state on a daily basis; entering into contracts and business dealings in the state of Virginia and with Virginia citizens and businesses; by regularly engaging in the ultra-hazardous activity of transporting goods and packages in interstate commerce over Virginia roads to and for Virginia residents and businesses; by qualifying, training and retaining professional tractor trailer drivers that BSL LOGISTICS knew would be used to operate commercial motor vehicles in Virginia in the ordinary course of its business; by providing services to its customers using commercial transportation services in Virginia that included transporting the goods in interstate commerce at the time of the crash;  and maintaining an agent for service of process in Virginia for any litigation arising out of its transportation of goods in interstate commerce.

14.    Specific personal jurisdiction over BSL LOGISTICS to be subject to Virginia Courts for this case is proper under the Virginia Long Arm Statute and constitutional minimum requirements, as BSL LOGISTICS committed tortious acts within the State of Virginia, including without limitation by improperly qualifying, hiring, supervising and retaining Defendant, ANGESOM GHEBRENDRIAS to utilize its commercial motor vehicles to deliver goods in Virginia, which resulted in the Crash.

## FACTUAL ALLEGATIONS

15.    The transportation of goods in interstate commerce constitutes a hazardous activity that presents substantial dangers to the driving public when not done safely, properly and with due caution. Accordingly, there are a number of federal regulations, state statutes, industry standards and local ordinances that govern the investigation and selection of motor carriers, the qualification, training and retention of professional tractor trailer drivers, the proper maintenance and equipment for commercial motor vehicles, and the safe operation of motor carriers, commercial motor vehicles and professional truck drivers.

16.    At all times material hereto, MODEL TRANSPORT was an active interstate Motor Carrier (USDOT #2441942, MC-842449), registered to transport goods in interstate commerce including in the State of Virginia for profit pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation ("USDOT").

17.    Accordingly, MODEL TRANSPORT was subject to all state and federal laws, statutes, regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, including trailers, and the safe brokering of goods in interstate commerce, including without limitation, Title 46.2 of the Code of Virginia governing motor vehicles and the Federal Motor Carrier Safety Regulations

("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

18.     At all times material hereto, MODEL TRANSPORT, regularly engaged in a commercial enterprise that involved the use of motor carriers, commercial motor vehicles, including trailers, and licensed commercial motor vehicle drivers as an integral part of its business. As a result, MODEL TRANSPORT had a duty and obligation to the driving public to exercise reasonable care when undertaking the selection and hiring of safe, competent, and conscientious motor carriers, commercial motor vehicles and professional drivers to deliver those goods.

19.     MODEL TRANSPORT selected and hired GHEBRENDRIAS to operate commercial motor vehicles in interstate commerce as approved by the USDOT, to deliver goods to MODEL TRANSPORT'S customers in Virginia as well as all over the country.  At all relevant times, GHEBRENDRIAS was an unsafe and unqualified commercial motor vehicle operator, and that information was readily available to MODEL TRANSPORT prior to the Crash in question.

20.     In return for the privilege to operate commercial motor vehicles on the public highways transporting goods in interstate commerce, motor carriers like MODEL TRANSPORT must make certain safety related certifications and verifications to the USDOT.  In order to obtain operating authority and get a USDOT Number MODEL TRANSPORT had to submit a Form OP-1 Application for Motor Property Carrier Authority.

21.     Each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that MODEL TRANSPORT has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that MODEL TRANSPORT will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States and must comply with all

pertinent Federal, State, local and tribal statutory and regulatory requirements when operating within the United States.

22.    More specifically, each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration that, at a minimum, MODEL TRANSPORT:

a.    had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

b.    could produce a copy of the FMCSRs;

c.    had and will have in place a driver safety training/orientation program;

d.    had and will have prepared and maintain an accident register;

e.    was familiar with USDOT regulations governing driver qualifications and had and will have in place a system for overseeing driver qualification requirements;

f.    had and will have in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

g.    was familiar with, and had and will have in place a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

h.    must comply with all pertinent Federal, State, local and tribal statutory and regulatory requirements when operating within the United States.

23.    MODEL TRANSPORT was required to and did submit an MCS-150 form to the

USDOT that also contained similar safety certifications signed under penalty of perjury that it was familiar with the FMCSRs.

24.     An authorized representative of MODEL TRANSPORT swore under penalty of perjury to comply with the above Safety Certifications.

25.     On February 1, 2023, ANGESOM GHEBRENDRIAS was a class A licensed commercial motor vehicle operator driving the 2019 Kenworth tractor owned, leased and/or controlled by BSL LOGISTICS, bearing VIN # 1XKYD49X5KJ236871 (the "Truck"), and pulling a 53-foot trailer that was owned, leased, and controlled by MODEL TRANSPORT (the "Trailer") (collectively referred to as the "Tractor-Trailer").  ANGESOM GHEBRENDRIAS was operating the Tractor-Trailer in interstate commerce with the knowledge, consent, and permission of Defendants BSL LOGISTICS and MODEL TRANSPORT.

26.     Accordingly, ANGESOM GHEBRENDRIAS was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles including, without limitation, Title 46.2 of the Code of Virginia governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

27.     At all relevant times, ANGESOM GHEBRENDRIAS was an employee, agent, apparent agent and/or servant driving and performing services for MODEL TRANSPORT and BSL LOGISTICS.

28.     At all times material hereto, ANGESOM GHEBRENDRIAS had permission to use the Tractor.

29.     At all times material hereto, ANGESOM GHEBRENDRIAS had permission to use

the Trailer.

30.    At all times material, ANGESOM GHEBRENDRIAS was using the Tractor-Trailer under MODEL TRANSPORT's operating authority.

31.    At all times material, ANGESOM GHEBRENDRIAS used the Tractor-Trailer with the knowledge, consent, and permission of and for the benefit of Defendant MODEL TRANSPORT and BSL LOGISTICS.

32.    Defendant ANGESOM GHEBRENDRIAS was operating the Truck for the Defendant MODEL TRANSPORT and was otherwise working in the course and scope of said employment, agency, apparent agency, and/or service and subject to MODEL TRANSPORT's control or right to control, such that MODEL TRANSPORT should be considered his actual and statutory employer, agent, apparent agent and/or servant.

33.    At all times material hereto, MODEL TRANSPORT had non-delegable duties to ensure that the drivers it hired to deliver their goods throughout the United States in its tractor-trailers and commercial motor vehicles were reasonably safe and complied with all laws, regulations and industry standards concerning the safe operation of commercial motor vehicles on our roadways.

34.    Each of the Defendants acted in a manner that either alone or combined and occurring with the actions of the other Defendants' acts of negligence, directly and proximately caused the crash described hereinafter and resulting damages claimed herein.

<u>**FACTS REGARDING THE CRASH**</u>

35.    On the afternoon of February 1, 2023, Anthony Russo was operating a 2017 Honda Accord at the intersection of Kempsville Road and Kempsville Circle, in the City of Norfolk, Virginia, with the intent to drive home by entering the intersection.

36.    At that same time, GHEBRENDRIAS was operating the Tractor-Trailer northbound on Kempsville Road. At that time and place, Defendant GHEBRENDRIAS negligently operated the Tractor-Trailer and travelled through an illuminated red light, violating Plaintiff's right of way and striking the driver's side of Plaintiff's Honda Accord.

37.    GHEBRENDRIAS was at all relevant times operating the Tractor-Trailer as a professional commercial motor vehicle operator, familiar with operating tractor-trailer combinations on interstate highways and roads, including Kempsville Road in Norfolk, Virginia and he failed to observe the traffic signal visible to him ahead, failed to see Decedent RUSSO's vehicle directly in front of him in the intersection, and negligently drove the Tractor-Trailer such that  he drove the tractor-trailer into Mr. Russo's vehicle which was legally within the subject intersection, resulting in Mr. Russo' severe injuries and resultant death.

38.    At all relevant times, Mr. Russo was a properly restrained driver of the 2017 Honda Accord and in no way caused or contributed to the Crash or his death.

39.    Each Defendant acted in a manner that either alone or combined with the actions of other Defendant's acts of negligence, directly and proximately caused the Crash and the severe traumatic injuries and resulting tragic death of Mr. Anthony Russo four (4) days after the Crash.

## DAMAGES

40.    Decedent Anthony J. Russo was born on August 2, 1945, and died in Virginia Beach, Virginia, on February 5, 2023.

41.    At the time of his death, Mr. Russo had the following statutory survivor pursuant to the Virginia Wrongful Death Act (the "Survivor"):

a.    JAMES ROBERT RUSSO, his surviving son.

42.     As a direct and proximate result of Mr. Russo's wrongful death, the Estate of ANTHONY J. RUSSO and his Survivor suffered the following damages ("Wrongful Death Damages"):

    a.   The reasonably expected loss of income of the Decedent;

    b.   The reasonably expected loss of services, protection, care, and assistance provided by the Decedent;

    c.   Expenses for care, treatment, and hospitalization for Mr. Anthony J. Russo related to the injuries he sustained that ultimately resulted in his death;

    d.   Funeral expenses paid by the estate or that have become a charge against the Estate, or that were otherwise paid for on behalf of Mr. Russo; and

    e.   The loss of companionship, advice, guidance, sorrow, solace, mental anguish, society, and kindly offices and advice of Mr. Russo from the date of the Crash and into the future.

**COUNT I**
**WRONGFUL DEATH-ACTIVE NEGLIGENCE AGAINST DEFENDANT ANGESOM GHEBRENDRIAS**

Plaintiff incorporates herein the allegations in paragraphs 1-42 as if fully restated herein.

43.     At all times material hereto, GHEBRENDRIAS had non-delegable duties to operate the Truck in a reasonable and safe manner and to know of and abide by all state laws, statutes, regulations and industry standards governing the safe operation of commercial motor vehicles, including without limitation, Title 46.2 of the Code of Virginia governing motor vehicles.

44.     GHEBRENDRIAS breached those duties in one or more of, but not limited to, the following ways:

    a.   driving carelessly in violation of Code of Virginia Sec. 46.2-816.1;

b.     driving recklessly in violation of Code of Virginia Sec. 46.2-852;

c.     failing to obey a traffic light in violation of Code of Virginia Secs. 46.2-830 and 46.2-833;

d.     failing to yield the right of way approaching or entering an intersection in violation of Code of Virginia Sec. 46.2-863;

e.     operating the truck in a negligent and unsafe manner;

f.     failing to keep a proper lookout while operating the truck;

g.     failing to appreciate approaching traffic;

h.     driving the truck while distracted;

i.     failing to operate the truck in accordance with generally accepted safety principles and practices of the commercial vehicle industry;

j.     failing to operate the truck in accordance with the minimum safety guidelines set forth in the Virginia Code, company safety policies, generally accepted safety principles and practices of the commercial vehicle industry; and

k.     failing to operate the truck in a safe and prudent manner in view of the conditions that existed at the time of the Crash.

45.     GHEBRENDRIAS negligently and carelessly breached the duties he owed to the driving public who were exposed to his actions, including Mr. Russo.

46.     GHEBRENDRIAS also negligently and carelessly breached the statutory duties he owed to the driving public as a professional commercial vehicle operator under the cited Virginia Traffic Laws and Federal Motor Carrier Safety Regulations, which were enacted for the safety of the motoring public and designed to protect against serious crashes and fatalities involving drivers and other road users who were exposed to his actions, including Mr. Russo.

GHEBRENDRIAS's negligence and negligence *per se* directly and proximately caused the severe injuries and death of Mr. Anthony Russo and the resulting Wrongful Death Damages. WHEREFORE, Plaintiff demands judgment against Defendant GHEBRENDRIAS, jointly and severally with the other Defendants for all damages permitted by Virginia law, including costs, and post-judgment interest, together with such further relief this Court deems equitable and just.

**COUNT II**
**WRONGFUL DEATH - ACTIVE NEGLIGENCE AGAINST**
**DEFENDANT MODEL TRANSPORT, LLC.**

Plaintiff incorporates herein the allegations in paragraphs 1-46 as if fully restated herein.

47.     MODEL TRANSPORT had non-delegable common law and statutory duties to ensure that its drivers and vehicles were reasonably safe and complied with all laws and industry standards concerning the safe operation and maintenance of commercial vehicles in interstate commerce.

48.     Upon information and belief, MODEL TRANSPORT breached the above-mentioned duties and was therefore negligent in one or more of, but not limited to, the following ways:

a.     prior to hiring, selecting, or otherwise contracting with GHEBRENDRIAS, failing to conduct reasonable due diligence, or to retain a competent third party to conduct due diligence, into the safety record, driving history, training, experience and licensure of Defendant GHEBRENDRIAS

b.     by negligently, recklessly, or with careless disregard for the safety of the public, hiring, selecting, contracting or otherwise engaging GHEBRENDRIAS to operate its commercial vehicles in interstate commerce in light of information that was known, or should have been known, regarding GHEBRENDRIAS, including his

subpar safety record;

c.     failing to ensure GHEBRENDRIAS had the proper training, knowledge and experience to inspect and operate the truck in a reasonably safe manner for a commercial truck driver pursuant to 49 C.F.R. 383.110, 383.111, 383.113 and Part 391;

d.     failing to properly train and instruct its driver GHEBRENDRIAS on safe driving, hazard perception, controlling speed, maintaining proper distance, and other safe and defensive driving techniques pursuant to 49 C.F.R. 383.110 and 383.111;

e.     failing to verify that GHEBRENDRIAS operated the truck in a reasonably safe manner and abided by all laws governing the safe operation of commercial vehicles;

f.     negligently supervising GHEBRENDRIAS;

g.     negligently retaining GHEBRENDRIAS;

h.     negligently entrusting the truck, a dangerous instrumentality, to a dangerous, and unqualified driver, like GHEBRENDRIAS;

i.     habitually and recklessly disregarding state laws and regulations and industry standards governing the safe hiring, training and retention of commercial vehicle drivers, and the safe operation of commercial vehicles, which created a zone of danger that was reasonably anticipated to cause injury to the traveling public and to all motorists exposed to its unsafe commercial vehicle drivers like GHEBRENDRIAS; and/or

j.     having a negligent mode of operation and poor safety culture that created a foreseeable danger to all motorists exposed to its commercial drivers.

49.     MODEL TRANSPORT negligently and carelessly breached the duties it owed to the driving public who were exposed to the actions of its commercial truck driver, including Mr. Russo.

50.     MODEL TRANSPORT also negligently and carelessly breached the statutory duties it owed to the driving public as a trucking company with interstate operating authority under the cited Federal Motor Carrier Safety Regulations, which were enacted for the safety of the motoring public and designed to protect against serious crashes and fatalities involving drivers and other road users who were exposed to his actions, including Mr. Russo.

MODEL TRANSPORT'S negligence and negligence *per se* directly and proximately caused the severe injuries and death of Mr. Anthony Russo and the resulting Wrongful Death Damages.    WHEREFORE, Plaintiff demands judgment against Defendant MODEL TRANSPORT, jointly and severally with the other Defendants, for all damages permitted by Virginia law, including costs and post-judgment interest, together with such further relief this Court deems equitable and just.

## COUNT III
## WRONGFUL DEATH - VICARIOUS LIABILITY AGAINST DEFENDANT MODEL TRANSPORT, LLC. – RESPONDEAT SUPERIOR

Plaintiff RUSSO incorporates herein the allegations in paragraphs 1-50 above as if fully restated herein.

51.     At all relevant times, GHEBRENDRIAS was the employee, agent, servant, independent contractor for, or was acting in joint venture with MODEL TRANSPORT and operating in the course and scope of this employment, agency, or joint venture.

52.     MODEL TRANSPORT retained the right to exercise control over GHEBRENDRIAS in connection with this Load and MODEL TRANSPORT's activities were

directed to the details required for the ultimate purpose for which it was hired by the shippers; that is, delivery of a load to its proper destination in a timely fashion.

53.    MODEL TRANSPORT, therefore, is vicariously liable for the acts of GHEBRENDRIAS with respect to the Crash.

54.    The negligence of MODEL TRANSPORT's agent, GHEBRENDRIAS, directly and proximately contributed to cause the Crash, Mr. Russo's wrongful death, and the Estate of ANTHONY J. RUSSO's Damages and the Survivor's Damages.

55.    Accordingly, MODEL TRANSPORT, as a direct and proximate result of the negligence of its agent GHEBRENDRIAS, is responsible for the Crash, Mr. Russo's injuries and his wrongful death, and the Estate of ANTHONY J. RUSSO's Damages and the Survivor's Damages.

WHEREFORE, Plaintiff demands judgment against Defendant MODEL TRANSPORT, jointly and severally with the other Defendants, for all damages permitted by Virginia law, including costs and post-judgment interest, together with such further relief this Court deems equitable and just.

## COUNT IV
## WRONGFUL DEATH
## DANGEROUS INSTRUMENTALITY LIABILITY AGAINST
## DEFENDANT BSL LOGISTICS, LLC

Plaintiff RUSSO incorporates herein the allegations in paragraphs 1-55 above as if fully restated herein.

56.    BSL LOGISTICS knowingly permitted and consented to GHEBRENDRIAS operating the Truck, which was owned, under lease, or otherwise under the control of BSL LOGISTICS.

57.    BSL LOGISTICS knew GHEBRENDRIAS was an unsafe and incompetent driver when BSL LOGISTICS knowingly permitted and consented to allow GHEBRENDRIAS to operate the Truck. BSL LOGISTICS is, therefore, vicariously liable for the negligence of GHEBRENDRIAS.

**WHEREFORE**, Plaintiff demands judgment against Defendant BSL LOGISTICS, LLC, jointly and severally with the other Defendants, for all damages permitted by Virginia law, including costs and post-judgment interest together with such further relief this Court deems equitable and just.

## COUNT V
## WILLFULL AND WANTON NEGLIGENCE

Plaintiff RUSSO incorporates herein the allegations in paragraphs 1-57 above as if fully restated herein.

58.    Defendant GHEBRENDRIAS had a duty to refrain from acting consciously in disregard of the rights of other vehicles on the highway, including Decedent Russo or acting with a reckless indifference to the consequences to such other persons, when he was aware that his conduct, and was also aware, from his knowledge of existing circumstances and conditions, that his conduct would probably result injury to another.

59.    Notwithstanding that duty, GHEBRENDRIAS deliberately and consciously and will willful and wanton negligence, ignored traffic safety and all state and federal laws, statutes, regulations and industry standards governing the safe operation of commercial motor vehicles, including without limitation, Title 46.2 of the Code of Virginia governing motor vehicles.

60.    GHEBRENDRIAS engaged in this willful, wanton and reckless act despite knowing full well his conduct was likely to cause injury or death to another.

61.    As a direct and proximate result of the breach of his duty, and of his willful, wanton, and/or reckless conduct, he caused the Crash and the severe injuries and death of Mr. Anthony Russo and the resulting Wrongful Death Damages.

62.    Because GHEBRENDRIAS was, at all relevant times, employed by, and agent of, and/or a borrowed servant of MODEL TRANSPORT and/or BSL LOGISTICS, INC., and was working within the scope of his employment and/or in furtherance of the business of his employer, MODEL TRANSPORT and/or BSL LOGISTICS, INC. is/are liable for GHEBRENDRIAS'S conduct, and the damages caused thereby, by virtue of the doctrine of respondeat superior.

### Count VI
### SURVIVORSHIP

Plaintiff RUSSO incorporates herein the allegations in paragraphs 1-62 above as if fully restated herein.

63.    As detailed above, Defendants breached their duty of care resulting in injuries and death to the Decedent, Anthony Russo.

64.    As a direct and proximate result of the Defendants' negligence as described above, the Decedent was severely and permanently injured; he incurred substantial medical expenses in an effort to be cured of his severe and permanent injuries; he was caused to suffer great physical pain, mental anguish and suffering; and he was caused suffer inconvenience and to be unable to attend to his necessary and lawful affairs.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, and by virtue of the doctrine of respondeat superior, for all damages permitted by Virginia law, including costs and post-judgment interest together with such further relief this Court deems equitable and just.

**PRAYER FOR RELIEF**

65.    WHEREFORE, Plaintiff John Russo, as the Personal Representative of the Estate of Anthony J. Russo, demands judgment against Defendants jointly and severally in the sum of $25,876,134.09 in compensatory damages and $350,000 in punitive damages, plus prejudgment interest from February 1, 2023, post-judgment interest, costs expending in this action, and such other relief as the Court may deem appropriate and justice may require.

**TRIAL BY JURY**

Plaintiff respectfully demands a trial by jury of all issues and counts so triable herein.

Respectfully submitted,

David B. Holt (VSB No. 65564)
*Co-Counsel for Plaintiff John Russo*
THE BRAIN INJURY LAW CENTER
27 W. Queen's Way, Suite 300
Hampton, Virginia 23669
Telephone: (757) 244-7000
Facsimile: (757) 244-7046
*dholt@smithlawcenter.com*

Stephen M. Smith (VSB No. 14362)
David B. Holt (VSB No. 65564)
C. Stewart Gill, Jr. (VSB No. 42789)
*Co-Counsel for Plaintiff John Russo*
THE BRAIN INJURY LAW CENTER
27 W. Queen's Way, Suite 300
Hampton, Virginia 23669
Telephone: (757) 244-7000
Facsimile: (757) 244-7046
Email: *ssmith@braininjurylawcenter.com*
Email: *dholt@smithlawcenter.com*
Email: *sgill@smithlawcenter.com*

Joseph V. Camerlengo, B.C.S.
(to be admitted *Pro Hac Vice*)
(FL Bar No. 008192)
Jessica L. Lanifero
(to be admitted *Pro Hac Vice)*
1200 Riverplace Blvd, Suite 902
Jacksonville, Florida 32207
Telephone: (904) 306-9220
Facsimile: (904) 306-9221
Email: *jvc@truckcrashlaw.com*
Email: *jll@truckcrashlaw.com*
Email: *team@truckcrashlaw.com*